IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JEROME NELSON, ) | |
| ) | |
| ) | CIVIL ACTION NO. 0:05-3599-MBS-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| LINDA S. MCMAHON,[1] ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on February 15, 2000, alleging disability as of January 14, 2000 due to chronic back pain, hypertension, a seizure disorder, and depression. (R.pp. 23, 94-95, 146). Plaintiff's claims

---

[1] On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g) (2000).



were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on February 15, 2001. (R.pp. 35-72). The ALJ thereafter denied Plaintiff's claims in a decision issued July 10, 2001. (R.pp. 23-31). The Appeals Council denied Plaintiff's request for a review of the decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 3-4). Plaintiff then brought suit in this United States District Court. Nelson v. Barnhart, C/A No. 6:03-1641.

In the interim, Plaintiff filed a second set of applications for DIB and SSI on September 20, 2001, which resulted in a different ALJ issuing a favorable decision on August 2, 2002, finding that Plaintiff was disabled as of July 11, 2001, one day following the prior unfavorable decision. (R.pp. 10-13). The Commissioner therefore filed a motion to remand in C/A No. 6:03-1641, noting the award of DIB and SSI to the Plaintiff on his second applications, and seeking remand of the matter for possible reconciliation of the two applications and to consider the new decision's effect on the previous applications pursuant to the procedures in HALLEX, I-5-3-17.[2] C/A No. 6:03-1641 was then remanded to the Commissioner by order of the District Court filed February 4, 2004. (R.p. 574). That order also consolidated both claims.

On November 30, 2004, the Appeals Council sent the case back to the first ALJ for consideration of the now consolidated claim. (R.pp. 590-592). Hearings were held on April 27, 2005 and July 20, 2005; (R.pp. 665-759); following which the ALJ issued an unfavorable decision on November 1, 2005, finding that Plaintiff was not disabled at any time through the date of that decision. (R.pp. 492-510). The Appeals Council denied Plaintiff's request for a review of that

---

[2]HALLEX is an internal manual used by the Social Security Administration to provide guidance to the Office of Hearings and Appeals. Moore v. Apfel, 216 F.3d 864, 868 (9th Cir. 2000).

2



decision, thereby making that determination of the ALJ the final decision of the Commissioner on his claims. (R.p. 486).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as

3



it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **Discussion**

A review of the record shows that Plaintiff, who was forty (40) years old when he alleges he became disabled, has a high school education with past relevant work experience as a warehouse utility person. (R.pp. 94, 146-147, 153, 191, 201). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff was unable to perform his past relevant work, he nevertheless retained the residual functional capacity to perform a significant range of heavy work[3], and was therefore not disabled. (R.pp. 509-510).

Plaintiff asserts that in reaching this decision, the ALJ erred by relying on a medical opinion which was based on a misapprehension of the facts of this case, and by failing to properly reconcile the issue of the validity of Plaintiff's IQ score. Plaintiff also argues that good cause did not exist for the Appeals Council to reopen the 2002 fully favorable decision in his case.

## **I.**

### **(Decision to Reopen 2002 Favorable Decision)**

As previously noted, while the United States District Court case involving Plaintiff's 2001 unfavorable decision was pending, Plaintiff filed a new application for DIB and SSI and was

---

[3]"Heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. § 416.967(d).



awarded benefits on August 2, 2002. This award was based on a finding that the severity of Plaintiff's mental impairment met the requirements of Listing 12.05(C) of the Listings of Impairments.[4] (R.p. 11). Plaintiff's 2001 unfavorable decision was then reversed and remanded by this Court under Sentence Four of 42 U.S.C. § 405(g) to "obtain the file regarding the subsequent allowance for possible reconciliation of the two applications and to consider its effect on the previous applications pursuant to the procedures of HALLEX I-5-3-17." (R.p. 574). HALLEX is the Social Security Administration's internal rules manual which regulates the administrative processing of disability claims at the hearing level and above. Pursuant to HALLEX I-5-3-17, if the determination of a subsequent claim is favorable, the Appeals Council will consider the evidence and the subsequent claim to determine whether there is new and material evidence relating to the prior claim. The Appeals Council may also conclude that the favorable determination on the subsequent claim was incorrect, and in such cases the Appeals Council may reopen the subsequent claim to revise the favorable determination. See HALLEX, I-5-3-17; 20 C.F.R. §§ 404.987; 404, 988; see generally, Mullen v. Bowen, 800 F.2d 535, 538-540, n. 3 (6th Cir. 1986).

Plaintiff argues in his brief that this Court's remand order did not allow for a review by the Appeals Council of his subsequent favorable determination because the remand order only provided for a reconsideration of the ruling in Plaintiff's first application. This argument is without merit. As noted above, the Court's order specifically directed a remand to the Appeals Council in order that Plaintiff's two applications could be reviewed for possible reconciliation with each other

---

[4]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medial signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if their impairment meets the criteria of an impairment set forth in the Listings. See 20 C.F.R. §§ 416.925, 416.926 (2003).

5



under the cited HALLEX rule. That HALLEX rule in turn specifically allows the Appeals Council to review and to reopen a subsequent favorable determination if it determines that the favorable determination on the subsequent claim was incorrect. That is exactly what the Appeals Council did in this case. Therefore, the question before this Court is not whether the Appeals Council lacked the authority to take the action that it did. It clearly had that authority. Rather, the question is whether the Appeals Council had "good cause" to reopen that subsequent favorable decision. 20 C.F.R. § 404.988(b) [A prior favorable decision may be reopened if the Commissioner finds good cause to reopen the case].[5]

Here, the "good cause" given for the reopening of Plaintiff's subsequent favorable decision was the second ALJ's purported misinterpretation of Listing 12.05(C); i.e., that he failed to consider, in addition to Plaintiff's I.Q. scores, whether Plaintiff had significant deficits of adaptive functioning. (R.pp. 590-592). This issue is discussed in Section II, infra, as part of the analysis of whether the current decision before the Court is supported by substantial evidence.

## II.

### (Merits of Decision)

The dispute in this case revolves around the ALJ's finding in his decision on remand that Plaintiff's mental impairment did not meet the requirements for Listing 12.05(C), dealing with mental retardation. The ALJ in Plaintiff's 2002 case, which resulted in a favorable decision, had found that the severity of Plaintiff's impairment did meet the requirements of that Listing. (R.pp. 10-

---

[5]In addition to the Appeals Council having the authority to review and reopen Plaintiff's subsequent favorable decision under the Court's order of remand and HALLEX I-5-3-17, the Commissioner also notes that, prior to receiving the Court's remand order, the Appeals Council had already independently selected this case for quality review and found that the August 2002 favorable decision warranted reopening. (R.pp. 493, 590).

6



13).

Listing 12.05 defines mental retardation as "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The Listing further provides that the required level of severity for this disorder is met when the requirements of any of the four sets of criteria (paragraphs A-D of the Listing) are satisfied as long as the impairment also satisfies the diagnostic description (i.e., significantly sub-average general intellectual functioning with deficits in adaptive functioning). 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(a). The applicable paragraph for consideration of Plaintiff's claim is paragraph C:

> A valid verbal, performance, or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work-related limitation of functioning....

In other words, Plaintiff would meet the requirements of Listing 12.05(C) if he has sub-average general intellectual functioning with deficits in adaptive functioning, has a valid verbal, performance, or full scale I.Q. of 60 - 70, and a physical or other mental impairment imposing an additional and significant work-related limitation of functioning.

In reaching his decision that Plaintiff did not meet the requirements of this Listing, the ALJ found that Plaintiff does not suffer from any "severe" medically determinable mental impairment. (R.pp. 503-504). However, after careful review and consideration of the record in this case, the undersigned does not find that this determination is supported by substantial evidence, as is discussed below, and that remand of the case for further administrative proceedings is therefore required.

With respect to the issue of Plaintiff's mental abilities, the record reflects that a

7



consultative psychological evaluation was performed by Dr. Gene Sausser on February 26, 2001. Following his evaluation of the Plaintiff, Dr. Sausser diagnosed Plaintiff with mild mental retardation, achievement deficit, and a depressive disorder, with a verbal I.Q. of 69, a performance I.Q. of 65, and a full scale I.Q. of 65. (R.pp. 96-102, 228-234, 349-355). However, in October 2001, state agency psychologist Judith Von reviewed Plaintiff's medical records and completed a psychiatric review technique form in which she opined that Plaintiff did not have a severe mental impairment. Dr. Von opined that Plaintiff had only mild functional limitations with no episodes of decompensation due to his mental status. (R.pp. 250-263). In April 2002, a second state agency psychologist, Dr. Patrick Jerrell, reviewed Plaintiff's medical evidence. Dr. Jerrell opined that Plaintiff was moderately limited in his ability to understand and carry out detailed instructions and had moderate functional limitations, but was not significantly limited in other areas of work related function. (R.pp. 211-227).

In reaching his decision that Plaintiff met the criteria for Listing 12.05(C), the ALJ in Plaintiff's 2002 favorable decision noted Plaintiff's I.Q. scores as well as Plaintiff's high school records, which he found supported a low level of intellectual functioning. That ALJ further found that if a claimant cannot return to their past relevant work, they have established a significant work-related limitation, therefore meeting that requirement of 12.05(C). (R.p. 11). See Rainey v. Heckler, 770 F.2d 408, 410-411 (4th Cir. 1985) [If a claimant cannot perform his past relevant work, that fact alone establishes the "other, significant work-related limitation of function" required under § 12.05C.] The ALJ in the current decision determined, however, that the prior ALJ's conclusions were error because the prior ALJ incorrectly calculated Plaintiff's I.Q., and also because he did not find that Plaintiff's impairment met the diagnostic description in the introductory paragraph of Listing



12.05; i.e., significantly sub-average general intellectual functioning with deficits in adaptive functioning. (R.pp. 501-504). See Sullivan, 493 U.S. at 530 ["For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."].

In making this finding, the ALJ in the case now before the Court heavily relied on the hearing testimony of medical expert Jay Paul Ginsberg, who testified at the hearing via telephone. During questioning by the ALJ, Dr. Ginsberg opined that Plaintiff's I.Q. tests were invalid because he demonstrated an adaptive level greater than would be expected for a person with an I.Q. below 70, noting Plaintiff's work record prior to January 2000 and the fact that he did his own banking, that he attended regular classes in school, and that he had completed the twelfth grade. (R.pp. 712-715); Mackey v. Shalala, 47 F.3d 951, 953 (8th Cir. 1995) [Other evidence in record can be examined to discredit IQ indicative of mild mental retardation.]. The ALJ credited Dr. Ginsberg's testimony over that of Dr. Sausser (who had actually performed the I.Q. test), stating that Dr. Ginsberg had "thoroughly and intensively reviewed and objectively analyzed the entire body of medical evidence." The ALJ went on to state that "Dr. Ginsberg's knowledge of the medical evidence was impressively detailed and was the predominant predicate in the undersigned's ultimate decision." (R.p. 501).

Plaintiff correctly notes in his brief, however, that Dr. Ginsberg's conclusions were not in fact made with full consideration of the entire record. First, Dr. Ginsberg testified at the beginning of the hearing, and was therefore not even privy to the testimony of the Plaintiff or his supporting witnesses concerning the extent of his activities and personal life. Instead, Dr. Ginsberg only engaged in some cursory questioning of the Plaintiff over the telephone prior to rendering his opinions. (R.pp. 703-705). Further, with respect to Plaintiff's medical record, when asked whether

9



he had had an opportunity to review the entire record in the case, Dr. Ginsberg replied "well, I can only tell you that it was the files I was sent. I didn't have a summary listing of them." (R.p. 702). As for the important question of what level of functioning Plaintiff had exhibited in school (which the ALJ in Plaintiff's 2002 favorable decision found confirmed Plaintiff's low level of intellectual functioning), Dr. Ginsberg conceded that he did not even have those records to review. (R.p. 706). It is undisputed that some of these records indicate that Plaintiff was receiving "social promotions" rather than promotions based on intellectual attainments in school, and when asked by Plaintiff's attorney whether he was aware that Plaintiff had received at least two instances of social promotion, Dr. Ginsberg responded "well, I would like to see that." (R.p. 723).

During another point in his testimony, Dr. Ginsberg testified that Plaintiff had completed his daily activities questionnaire himself in his own hand, and noted that while the spelling was "not too good", the "overall - - the expressions, the grammatical construction, the handwriting itself, the fine motor skill, are all suggestive of an adequate level of functioning," and that "[a]n I.Q. of 66 simply could not handwrite a form such as this one." (R.p. 720). However, when asked on cross-examination whether it would change his opinion if he knew it was actually a family member who had filled out Plaintiff's Social Security forms for him, Dr. Ginsberg responded "well, that would make a difference." (R.p. 722). Plaintiff's counsel indicated that it was actually another family member who filled out these forms for the Plaintiff, a claim that was subsequently testified to later in the hearing after Dr. Ginsberg was no longer participating and had already given his opinion. (R.pp. 730-731). Plaintiff's counsel also points out that Dr. Ginsberg did not know that Plaintiff had never lived independently, and in fact lived with his mother his entire life up until her death, at which time he moved in with his aunt. Further, even though Dr. Ginsberg gave "driving"



10

as one reason to discount Plaintiff's low I.Q. scores and find that he possessed a degree of adaptability, Plaintiff's counsel notes that Plaintiff had in fact never driven an automobile. (R.p. 729).

Based on this record, the undersigned cannot conclude that substantial evidence supports the ALJ's decision to give "determinative" weight to Dr. Ginsberg's testimony and opinion in reaching his decision on Plaintiff's claim. Dr. Sausser had actually examined the Plaintiff, while it is clear from the record that, contrary to the ALJ's finding, Dr. Ginsberg had not had an opportunity to "thoroughly and intensively" review the entire body of evidence in this case prior to rendering his opinion. See Cotter v. Harris, 642 F.2d 700 (3rd Cir. 1981) [Listing cases remanded because of ALJ's failure to provide adequate explanation or reason for rejecting relevant probative evidence]; Dewey v. Barnhart, No. 05-3329, 2006 WL 1109767 (10th Cir. Apr. 27, 2006) [Case remanded where the record lacked medical evidence to support ALJ's RFC finding]. The decision of the Commissioner is further clouded by the seemingly contradictory findings of the ALJ that Plaintiff did not have a "severe" mental impairment[6], while then restricting Plaintiff to simple, low stress work in his hypothetical to the vocational expert. (R.pp. 502, 504, 509); *cf.* 20 C.F.R. § 404.1521(a) [an impairment is severe when it is more than a slight abnormality that has more than a minimal effect on the ability to do basic work activities]. Remand of this matter to the Commissioner for further consideration of Plaintiff's claim is therefore required.

Finally, while finding that a remand is required, the undersigned does not find that a remand for an award of benefits is appropriate at this time. Notwithstanding the findings of the I.Q.

---

[6]A finding which even the Commissioner seems to acknowledge in its brief was error. Defendant's Brief, p. 12, n. 7.

11



test administered by Dr. Sausser, a correct and proper review of the additional evidence in the file is necessary to determine whether the I.Q. score is itself valid, and also whether the claimant has adaptability sufficient to meet the appropriate criteria under Listing 12.05(C). See generally, Holland v. Apfel, 153 F.3d 620, 621-622 (8th Cir. 1998) ["An IQ test is useful in determining whether an applicant has a mental impairment, but other information in the record which indicates the individual's ability to function can be used to discredit the lone IQ score."]; Muse v. Sullivan, 925 F.2d 785, 789-790 (5th Cir. 1991) [finding that is was proper for the ALJ to discount I.Q. results which were questionable in light of the claimant's work experience, education, and demeanor]; Mackey, 47 F.3d at 953 [Other evidence in record can be examined to discredit IQ indicative of mild mental retardation.]. That was not done in this case.

Hence, before a definitive decision can be made on Plaintiff's claim, an appropriate and *conclusive* review must be made of the evidence and of Plaintiff's claims concerning his personal activities, the exact nature of his school record, and other factors. All of these matters are in question based on the record before the Court. Further, if a material dispute exists as to Plaintiff's I.Q. after a proper review of the evidence, additional testing may be required. Johnson v. Sullivan, No. 90-0034, 1991 WL 152413 at *2 (W.D.Va. Mar. 26, 1991). On remand the ALJ will be able to reconsider and re-evaluate the medical evidence, and obtain proper medical expert testimony (if necessary) as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002) [on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

## Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment



Image in margin.

affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for the purpose of a proper evaluation, discussion and findings with respect to Plaintiff's residual functional capacity, and for such further administrative action as is deemed necessary and appropriate. See  Shalala v. Schaefer, 113 S.Ct. 2625 (1993).

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

February 9,  2007

